**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHARLES FOSTER,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN FCI FORT DIX,**<br><br>**Respondent.** | **Civil Action No. 25-2165 (RK)**<br><br>**OPINION** |

This matter comes before the Court on a *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed by Petitioner Charles Foster, an inmate incarcerated at the Federal Correctional Institution ("FCI") Fort Dix. (ECF No. 1.) Petitioner challenges the Bureau of Prisons' ("BOP") determination that he is ineligible to earn First Step Act ("FSA") time credits pursuant to 18 U.S.C. § 3632(d)(4)(D). Respondent filed an Answer (ECF No. 8) and a Supplemental Answer (ECF No. 20) pursuant to this Court's Order (ECF No. 17). Petitioner filed a Reply (ECF No. 11) and a Supplemental Reply (ECF No. 24). Respondent also filed a Motion to Seal (ECF No. 23). The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2241. For the reasons explained below, the Court denies the Petition and grants the Motion to Seal in part.

## I. RELEVANT BACKGROUND

On April 17, 2002, the Middle District of Florida sentenced Petitioner to thirty years of imprisonment and three years of supervised release after a jury found him guilty on three counts: (1) Count One: Possession with intent to distribute and distribution of heroin, the use of which resulted in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; (2) Count Two: Possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. §

841(a)(1), (b)(1)(C); and (3) Count Three: Possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Judgment, dated April 18, 2002, ECF No. 20-2 at 1-3; Alisha Gallagher Declaration ("Gallagher Decl.") ¶ 4, ECF No. 20-1.) Petitioner's projected release date is January 2, 2027. (Public Information Inmate Data, ECF No. 8-2 at 1.)

Petitioner alleges that while on home confinement, he received a Code 102 escape from home confinement charge. (Petition at 10.) As a result, on September 25, 2024, the Center Discipline Committee ("CDC") held a hearing and found that Petitioner committed the prohibited act. (ECF No. 1-1 at 3.) On October 9, 2024, the Discipline Hearing Officer ("DHO") reviewed the disciplinary report and the CDC's finding, and sanctioned Petitioner to a loss of forty-one days of good conduct time. (*Id.* at 5.) That same day, Petitioner received a copy of the CDC report and a regional administrative remedy form, advising him of his ability to appeal the findings. (Petition at 10.)

On December 20, 2024, the Regional Director denied Petitioner's appeal, explaining that, "[Petitioner] [was] not sanctioned to any loss of FSA time credits." (*Id.* at 3.) Next, Petitioner appealed to the Central Office, challenging the alleged loss of good time credits and the change in his FSA eligibility status. (*Id.* at 4.) On March 6, 2025, the Central Office denied his request to expunge the incident report and declined to address the issue of FSA eligibility because it had not been addressed at the previous level and instructed Petitioner to file a new administrative remedy. (*Id.* at 5.)

On March 31, 2025, Petitioner filed the Petition seeking restoration and application of earned FSA credits and requesting supervised release. (Petition at 16.) On August 22, 2025, Respondent filed an Answer opposing relief, arguing that Petitioner's conviction of possession

with intent to distribute and distribution of heroin, the use of which resulted in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), renders him statutorily ineligible for FSA time credits. (Answer at 4-5.) On May 15, 2026, this Court ordered Respondent to supplement the record with documents concerning Petitioner's conviction and to address Petitioner's interpretation of the FSA statute. (ECF No. 17 at 3.) On June 15, 2026, Respondent filed a Supplemental Answer (ECF No. 20) and on July 2, 2026, Petitioner filed a Supplemental Reply (ECF No. 24). On June 19, 2026, Respondent filed a Motion to Seal Petitioner's Indictment and Pre-sentence Investigation Report. (ECF No. 23.) On August 26, 2026, Petitioner filed a Renewed Request to Adjudicate the Petition. (ECF No. 25.)

## II. <u>DISCUSSION</u>

Under 28 U.S.C. § 2241(c), habeas relief may be granted, and a federal court has jurisdiction, only when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Challenges to the fact or duration of confinement are "the essence of habeas." *Murray v. Bledsoe*, 386 F. App'x 139, 140 (3d Cir. 2010). "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485-86 (3d Cir. 2001).

### A. Exhaustion of Administrative Remedies

"The Third Circuit has consistently applied an exhaustion requirement to claims brought under § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citation modified). Exhausting administrative remedies includes the following: "(1) [A]llow[ing] the appropriate agency to develop a factual record and apply its expertise [to] facilitate judicial review; (2) permit[ing] agencies to grant the relief requested [and] conserves judicial resources; and (3)

provid[ing] agencies the opportunity to correct their own errors [to] foster[ ] administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996) (citations omitted).

There are four steps to exhaust the BOP's administrative remedy program. *See* 28 C.F.R. §§ 542.10 *et seq.* (regulations governing BOP administrative remedy program). The first step involves informal resolution with a staff member, § 542.13; the second step is a formal written complaint to the warden, § 542.14; the third step is appeal to the BOP Regional Director, § 542.15(a); and the final step is appeal to the General Counsel in the Central Office, § 542.15(a). Exhaustion of administrative remedies may be excused "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010). Additionally, "a prisoner need not exhaust administrative remedies where the issue presented involves only statutory construction[.]" *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012).

Here, Petitioner completed the administrative remedy process challenging his Code 102 violation through the Central Office level. (ECF No. 1-1 at 2-5.) The Central Office declined to address FSA eligibility because the issue was not addressed at the previous level and subsequently instructed Petitioner to file a new administrative remedy. (*Id.* at 5.) While the record does not indicate whether Petitioner did in fact file a new administrative remedy, Petitioner nevertheless challenges the statutory basis for his FSA eligibility pursuant to 18 U.S.C. § 3632(d)(4)(D)(lviii). *See Vasquez*, 684 F.3d at 433-34. Therefore, the Court finds that the Petition presents a question of statutory interpretation. Accordingly, the Court excuses the exhaustion requirement and turns to the merits of the Petition.

### B. FSA Time Credit Eligibility

The FSA established a system of mandatory time credits for incarcerated individuals who participate in recidivism reduction programming. When it enacted the FSA time credit system, Congress explicitly barred certain inmates from earning or applying such credits. *See* 18 U.S.C. § 3632(d)(4)(D)-(E). The FSA provides that, "[a] prisoner is ineligible to receive time credits under [the FSA] if the prisoner is serving a sentence for a conviction under any of" the enumerated provisions of law. 18 U.S.C. § 3632(d)(4)(D); *see also* 28 C.F.R. § 523.41(d)(2) ("If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. § 3632(d)(4)(D), the inmate is not eligible to earn FSA Time Credits."). Among the exclusions are certain convictions under the Controlled Substances Act, 21 U.S.C. § 841. *See* 18 U.S.C. § 3632(d)(4)(D)(lviii), (lxv-lxviii).

The exception at issue here is 18 U.S.C. § 3632(d)(4)(D)(lviii), which renders an inmate ineligible for FSA time credits if he was convicted of specific drug offenses that resulted in death. According to that provision, a prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under the following:

> (lviii) Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

18 U.S.C. § 3632(d)(4)(D)(lviii).

There is no dispute that Petitioner's sentence for possession with intent to distribute and distribution of heroin, the use of which resulted in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), is a disqualifying offense. *Id.* Petitioner argues that § 3632(d)(4)(D)(lviii) does not encompass his conviction because the Judgment describes his offense as "possession with intent

to distribute and distribution," while the statute refers to "manufacturing or distributing." (Petition at 12-15; Suppl. Reply at 1-2.) The Judgment identifies Count One as follows: "Possession with Intent to Distribute and Distribution of Heroin, the Use of Which Resulted in a Death." (Judgment at 1.) Petitioner is serving a sentence for that conviction. (*Id.*) Including the phrase "possession with intent to distribute" in the same count does not alter the fact that distribution resulting in death is still expressly identified in the charge.[1] Therefore, because Petitioner is serving a sentence for that offense, Petitioner's conviction falls within the plain language of § 3632(d)(4)(D)(lviii) such that it renders him ineligible under the FSA.

### C. Motion to Seal

Furthermore, pending before the Court is Respondent's Motion to Seal. (ECF No. 23.) Respondent moves to seal Exhibits 2 and 3 of Respondent's Supplemental Answer to avoid public disclosure of Petitioner's personal information, including history of his arrest and prosecution. (Kevin Maggio Declaration ("Maggio Decl."), ECF No. 23-1 ¶¶ 6-9.) Exhibit 2 is a copy of Petitioner's Indictment from *United States v. Foster*, No. 01-cr-198 (M.D. Fla. Dec. 12, 2001), ECF No. 20 (Indictment). (*Id.* ¶ 7.) Exhibit 3 is a copy of Petitioner's Presentence Investigation Report prepared in connection with *United States v. Foster*, No. 01-cr-198 (M.D. Fla. Dec.12, 2001), which was sealed. (*Id.* ¶ 8.)

A motion to seal is governed by Local Civil Rule 5.3, which provides in relevant part, that a request to seal must be presented by motion. Pursuant to Local Civil Rule 5.3(c)(3), the moving party must describe:

> (a) [T]he nature of the materials or proceedings at issue;
> (b) the legitimate private or public interest which warrant the relief sought;

---

[1] Because Petitioner's conviction renders him statutorily ineligible to receive FSA time credits and because Petitioner does not challenge the disciplinary hearing itself, the Court does not reach review of the disciplinary hearing. (ECF No. 1-1 at 3, 5.)

> (c) the clearly defined and serious injury that would result if the relief sought is not granted;
> (d) why a less restrictive alternative to the relief sought is not available;
> (e) any prior order sealing the same materials in the pending action; and
> (f) the identity of any party or nonparty known to be objecting to the sealing request.

L. Civ. R. 5.3(c)(3).

First, Respondent seeks to seal Exhibit 2, Petitioner's Indictment. (Maggio Decl. ¶ 7.) "An indictment may be sealed for any legitimate law enforcement reason or where the public interest requires it." *United States v. DiSalvo*, 34 F.3d 1204, 1218 (3d Cir. 1994). Second, Respondent seeks to seal Exhibit 3, Petitioner's Presentence Investigation Report. (Maggio Decl. ¶ 8.) New Jersey and Federal courts have recognized the legitimate privacy interest that pre-sentence investigation reports entail. *See, e.g.*, *United States v. Cianscewski*, 894 F.2d 74, 79 n.17 (3d Cir. 1990) ("The presentence report has always been considered a confidential document."); *United States v. Preate*, 927 F. Supp. 163, 165 (M.D. Pa. 1996) (setting forth reasons for confidentiality of pre-sentence reports); *State v. DeGeorge*, 274 A.2d 593, 595 (N.J. Super. Ct. App. Div. 1971) (stating that pre-sentence reports "should not be a matter of public record").

Respondent argues that Exhibits 2 and 3 must be sealed to avoid public disclosure of Petitioner's sensitive personal information and criminal history and that there are no less restrictive alternatives to sealing. (Maggio Decl. ¶¶ 9-10.) This Court agrees in part. While both documents are necessary to aid the Court in its consideration of Petitioner's habeas petition, and each document contains sensitive and confidential information, only the Presentence Investigation Report, if disclosed, would harm Petitioner's privacy interests as it relates to his criminal history and other personal information. Petitioner's Presentence Investigation Report was also previously sealed in *United States v. Foster*, No. 01-cr-198 (M.D. Fla. Dec. 12, 2001), while the Indictment

was not. Petitioner does not object to the Motion to Seal. Accordingly, Respondent has adequately demonstrated that restriction is necessary as to the Presentence Investigation Report, but not as to the Indictment. Therefore, the Court grants the Motion to Seal in part.

## III. **CONCLUSION**

For the reasons stated in the Opinion, the Court denies the Petition (ECF No. 1) and grants the Motion to Seal in part only as to Exhibit 3, the Presentence Investigation Report (ECF No. 23). An appropriate Order follows.

ROBERT KIRSCH
United States District Judge